## PRICE v. TUTTLE, County Auditor.

No. 4571.   Decided August 15, 1927.   (258 P. 1016.)

*M. R. Straw,* of Provo, for appellant.

*Booth & Brockbank,* of Provo, for respondent.

GIDEON, J.

Plaintiff ·(appellant herein) seeks a writ of mandate against defendant (respondent), as county auditor of Utah

county, directing defendant to draw a warrant on the county treasurer for $150 alleged to be due plaintiff for services as county surveyor of Utah county for the month of January, 1927. Defendant demurred on the ground that the petition did not state facts sufficient to entitle plaintiff to any relief. The court sustained the demurrer and dismissed the petition. Plaintiff appeals.

It is alleged in the petition and admitted by the demurrer that plaintiff was elected county surveyor of Utah county at the general election held in that county on the 2d day of November, 1926, for the term of office beginning on the 3d day of January, 1927. It is also alleged that petitioner received his certificate of election, took the oath and filed the bond required by law, and was at the time of filing the petition the duly elected, qualified, and acting surveyor of Utah county. It is further set out in the petition that on August 2, 1920, the then board of county commissioners of Utah county, at a regular meeting and in the manner provided by law, fixed and determined the salaries of all of the elective officers of Utah county for the term beginning in January thereafter, and at such meeting the salary of the county surveyor was fixed at $1,800 per annum; that thereafter until January, 1927, a salary of $1,800 per year, payable monthly, had been regularly paid to the occupant of the office. It is also stated that since the action of the board of county commissioners in August, 1920, no determination of the salary to be paid the county surveyor per annum has been made by the county commission other than a certain pretended determination of September 9, 1926. It is further stated in the petition that defendant, Tuttle, is the regularly elected, qualified, and acting auditor of Utah county, and as such auditor it became and was his duty to draw a warrant on the county treasurer for the monthly salaries of all elective officers of Utah county; that it thus became the duty of said auditor on February 1, 1927, to issue to the plaintiff a warrant on the county treasurer for the sum of $150 as and for his monthly salary for the month

of January, 1927; that request was made upon said auditor to issue said warrant, but the auditor refused to issue a warrant, for that amount and continues to so refuse. The petition sets out that the reason given by defendant auditor for his failure to draw the warrant for the sum of $150 in payment for the January salary of plaintiff was and is that the board of county commissioners of Utah county, by resolution passed on the 9th day of September, 1926, fixed and determined the salary of the county surveyor for the term begining on the first Monday in January, 1927, at the sum of $1,000 per annum; that the defendant proffered to deliver to plaintiff a warrant for the monthly salary of plaintiff in the sum of $83.33 only.

The action of the commissioners on September 9, 1926, in attempting to fix the salaries of the elective officers for the term beginning January, 1927, is set out in the petition, and it is further stated that said action of the commissioners was null and void for the reason and upon the ground that the board had no legal right or jurisdiction after the 1st day of August, 1926, to determine the salary of county surveyor or other elective officers for the term beginning January 1, 1927.

The question presented by the appeal calls for the construction of sections 5087 and 5088, Comp. Laws Utah 1917, as amended by chapter 112, Laws Utah 1921. The sections as amended, so far as material here, are as follows:

5087. "The annual salaries of the officers of all counties in the state shall be fixed by the respective boards of county commissioners at not to exceed the following maximum amounts; provided, that should the respective boards of county commissioners, or any of them, fail to fix the salary of any of the county officers as provided for in this section, the salary of the predecessor of said officer or officers whose salary has not been fixed shall apply. * * *"

5088. "The board of county commissioners of each county shall biannually, at a meeting held at least three months prior to the election for county officers, fix and determine the salaries of county officers, for whom maximum salaries are fixed, for the two years next succeeding * * * and, provided further, that the salaries of

such officers shall not be reduced for the term for which they were elected and shall have qualified."

It is plaintiff's contention that the failure of the county commissioners to fix and determine the salaries of the elective officers "at least three months prior to the election" takes from the board of county commissioners the authority to determine the salaries of the incoming elective officers. In other words, that the directions contained in section 5088 are mandatory, and any action on the part of the county commissioners subsequent to the three months' limitation is of no effect. It is the contention of the defendant that the language of the section is merely directory. It is insisted that the power to fix and determine salaries is a general authority vested in the commissioners by the express language of the statute, and that a failure to act prior to the three months' period before election did not deny to the commissioners this authority, and that the act of the commissioners of September 9, 1926, is therefore within their authority and binding upon the appellant. The trial court adopted the views of the defendant and was of the opinion that to hold otherwise would be "a strict and unusual construction under such provisions as herein set forth" and dismissed the petition. Whether the trial court was right in this conclusion will be determinative of this appeal.

In the construction of statutes it is the duty of courts to ascertain the intent of the legislative body and, if the legislation is within the constitutional power of the Legislature, to enforce that intent. In determining the intent of legislation not only the language of the act may be considered, but the purposes or objects sought by the Legislature should be and are considered by the courts in determining the legislative intent. In 25 R. C. L., at page 766, it is said:

"There is no universal rule by which directory provisions in a statute may under all circumstances be distinguished from those that are mandatory. In the determination of this question, as in every

other question of statutory construction, the prime object is to ascertain the legislative intention, as disclosed by all the terms and provisions of the act, in relation to the subject of legislation and the general objects intended to be accomplished."

In the same chapter, at page 769, the writer says:

"Where the words are in general statutory provisions, directing the mode of proceeding by public officers and intended to secure order, system and dispatch in proceedings, and by disregard of which the rights of parties cannot be injuriously affected, they are not regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated."

In 36 Cyc. 1157, it is stated:

"Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the Legislature, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other. * * * Statutes which confer upon a public body or officer power to act for the sake of justice, or which clothe a public body or officer with power to perform acts which concern the public interest or the rights of individuals, although the language is permissive simply, will be construed as imposing duties rather than conferring privileges, and therefore will be regarded as mandatory."

Again, on page 1160, it is said:

"A statute specifying at time within which a public officer is to perform an official act regarding the rights and duties of others is directory merely, unless the nature of the act to be performed or the phraseology of the statute, or other statutes relating to the same subject matter, is such that the designation of time must be considered as a limitation upon the power of the officer."

In the summary of chapter 155, Black, Interpretation of Law (2d Ed.), it is said:

"Where a statute specifies a time at or within which an act is to be done by a public officer or body, it is generally held to be directory only as to the time, and not mandatory, unless time is of the essence of the thing to be done or the language of the statute

contains negative words, or shows that the designation of the time was intended as a limitation of power, authority or right."

Both parties to this appeal concede the general principles that are controlling in the construction of statutes; namely, to ascertain the legislative intent and to be governed by that intent. The parties differ as to the legislative intent expressed in the acts quoted. The statute provides that county officers are chosen by the electors at the general elections held biennially in this state. It is a matter of common knowledge that county officers are nominated by political parties, and that such nominations are usually made within three months prior to the general election. The Legislature knew and must be presumed to have had these facts in contemplation in enacting the sections of the statute quoted. It seems reasonably clear, therefore, that the Legislature, by sections 5087 and 5088, quoted above, intended that political parties and any one aspiring for nomination to any county office should be advised before seeking or accepting nominations what salaries are to be received for the duties to be performed during the term of office next ensuing. In our judgment, not only did the Legislature have for one of its purposes the making certain of the amount of compensation to be received by the county officer during the term for which he seeks election, but likewise the intent was to deny to the board of county commissioners the right or power during a political campaign to take any action respecting the salaries of officers to be elected. Some suggestion is made in the brief of the county attorney that the authority to fix and determine salaries terminates at the date of the general election. There is no statutory provision cited to support that suggestion. If it be conceded under the statute quoted that the commissioners have authority to fix and determine the salaries of elective county officers until the date of the election, then, by the same reasoning, that authority would continue until the elected officer "shall have qualified."

The very purpose of the section would be defeated by such a construction, and an elective county officer would not know the compensation he would receive for the duties to be performed as such officer until he had received his certificate of election, furnished the required official bond, and taken the constitutional oath of office. That the Legislature intended a limitation upon the commissioners to fix and determine salaries of county officers is further and, in our judgment, conclusively evidenced by the provision found in section 5087. It is there provided that, should the county commissioners fail to fix and determine the salary of any county officer as provided therein, the salary of the predecessor of such officer shall apply to the incoming officer. It is therefore quite evident that it was the intent of the Legislature that there should be no county officer whose salary had not been fixed and determined at least three months prior to any general election. If the commissioners fail to fix and determine the salaries within three months of the election, nevertheless the compensation was definitely known to the aspirant for the office. The provision is that the salary of the former occupant should apply. In either event, therefore, the compensation was definite. If the commissioners did not act, the existing salary applied. If the commissioners acted, the compensation was definite.

Numerous cases are cited in the briefs of both parties which are illustrative of the holdings of courts in determining the mandatory or directory nature of statutes. We have examined many, if not all, of those cases. The opinions of the courts in all of them clearly indicate that the first consideration of the courts was to determine the legislative intent. In determining that intent not only the language found in the statutes, but the purpose and intent of the legislation guided the courts. When the intent was so determined, the cases were all controlled by the general principle stated in the quotations found herein.

Considering the evident intent and purpose of the legislation, we are of opinion and so hold that the trial court

was not in error in construing the language of the statute to be directory and not mandatory. The order of the court in sustaining the demurrer to the petition is overruled, and the cause is reinstated with directions to the district court to proceed in conformity with the views herein expressed, plaintiff to recover his costs.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.